UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| GULF COPPER & MANUFACTURING CORPORATION | § § § § | |
| Plaintiff., | § § | |
| VS. | § § | CIVIL ACTION NO. 3:19-CV-00034 |
| M/V LEWEK EXPRESS, her apparel, equipment, engines, freights, tackle, etc., *in rem* | § § § § § | In Admiralty, FED. R. CIV. P. 9(h) |
| Defendant. | § § | |

# ORDER

Plaintiff Gulf Copper & Manufacturing Corporation ("Gulf Copper") has filed an Opposed Motion for Pro-Rata Apportionment of *Custodia Legis* Expenses ("Motion for Pro-Rata Apportionment"), requesting that the intervening claimants, Gulf Marine Fabricators, LP ("Gulf Marine") and Trevaskis Limited ("Trevaskis"),[1] share in the costs of the *custodia legis* expenses accrued from the arrest of the M/V LEWEK EXPRESS (the "Vessel"). *See* Dkt. 29. After reviewing the motion, responses, and reply, as well as the applicable law, the Court concludes that the Motion for Pro-Rata Apportionment should be **GRANTED**.

## BACKGROUND

Gulf Copper filed this lawsuit on January 29, 2019, seeking to recover $442,255.00 for berthing, mooring, and related services it provided to the Vessel through the end of

---

[1] Collectively, Gulf Marine and Trevaskis will be referred to as the "Intervenors."

January 2019. Also on January 29, 2019, pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, Gulf Copper submitted (1) a Motion for Warrant of Seizure of the Vessel, asking the Court to order the United States Marshals Service to arrest the Vessel; and (2) a Motion to Appoint Substitute Custodian, requesting that Gulf Copper be appointed as substitute custodian with a daily berthing rate of $4,114.00. The following day, January 30, 2019, this Court granted both motions and the United States Marshals arrested the Vessel.

Following notice of the Vessel's arrest in the *Galveston Daily News*, Gulf Marine and Trevaskis intervened in the lawsuit to assert their respective claims against the Vessel. Gulf Marine asserted a claim for $578,743.76 arising from unpaid dockage, mooring, and towage fees. Trevaskis asserted a claim to three particular items of equipment currently onboard the Vessel valued at $9,250,000.00.

The Motion for Pro-Rata Apportionment addresses who should pay the costs of maintaining and preserving the Vessel under seizure. In deciding the current motion, the Court must answer four separate questions: (1) whether the Intervenors are required to pay the *custodia legis* expenses from the time of arrest of the vessel or from the time the claimants intervened in the suit; (2) whether the $4,114.00 daily docking fee charged by Gulf Copper, the substitute custodian, is reasonable; (3) whether Gulf Copper is entitled to immediate reimbursement of the *custodia legis* expenses; and (4) whether the expenses shall be allocated on a per capita or pro rata basis. The Court will address each issue below.

# *CUSTODIA LEGIS* EXPENSES

Since the Motion for Pro-Rata Apportionment seeks to apportion *custodia legis* expenses among the parties, it is worthwhile to briefly explain what *custodia legis* expenses are and why they are important in an admiralty case.

*In custodia legis* is a Latin phrase which means "in the custody of the law." In the admiralty context, *custodia legis* expenses are the costs, fees, and expenses incurred by seizing a vessel. Common *custodia legis* expenses include dockage fees, maintenance costs, and necessary fuel and water to keep equipment operating while a vessel is under arrest. Although expenses and costs incurred while a vessel is under seizure and in judicial custody do not create a maritime lien, it is well-settled that "services or property advanced to preserve and maintain the vessel under seizure, furnished upon authority of the court, should be allowed as *custodia legis* expenses." *Gen. Elec. Credit & Leasing Corp. v. Drill Ship Mission Expl.*, 668 F.2d 811, 816 (5th Cir. 1982). *See also N.Y. Dock Co. v. The Poznan*, 274 U.S. 117, 121 (1927) ("[S]ervices or property furnished . . . for the common benefit of those interested in a fund administered by the court, should be paid from the fund as an 'expense of justice.'"); *Associated Metals & Minerals Corp. v. Alexander's Unity MV*, 41 F.3d 1007, 1018 (5th Cir. 1995) (affirming the award of *custodia legis* expenses and finding that "[a]nything that maintained the value of the ship benefited all of the lienholders of the ship"). "While it is preferable to secure a court order authorizing this expense before incurring it, nevertheless even in the absence of court order these 'custodia legis expenses' may be ordered by the court to be paid in priority to the seizing mortgage

creditor if 'equity and good conscience' so require." *Gen. Elec. Credit & Leasing Corp.*, 668 F.2d at 815 (citation omitted).

As protection to parties who advance funds to seize a vessel, and to parties who render services to a seized vessel, priority is awarded to claims of *custodia legis* expenses over all maritime lien claims. *See John W. Stone Oil Distrib., Inc. v. M/V Red Rose*, 1987 A.M.C. 137, 140 (E.D. La. 1985) ("*[C]ustodia legis* expenses which are incurred in the care and custody of a vessel while it is within the custody of a Court enjoy a high priority in the distribution of proceeds from a judicial sale and actually outrank all maritime lien claims.") (citation omitted).

The Fifth Circuit has explained that "the district court enjoys broad equitable authority over the administration of maritime seizures." *Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351, 354 (5th Cir. 1997). As such, district courts routinely "divide the *custodia legis* expenses among the parties" and "[w]hen such orders are entered[,] [it] is largely discretionary and vary in different cases." *Id*. at 353.

As a final note, the party seeking to collect *custodia legis* expenses bears the burden of proving that those expenditures were reasonably incurred and reasonable in amount. *See Nat'l Bank of N. Am. v. S.S. Oceanic Ondine*, 315 F. Supp. 386, 388 (S.D. Tex. 1970).

## ANALYSIS

**A.** **Should the *Custodia Legis* Expenses be Shared by the Intervenors from the Date of the Vessel Seizure or the Date They Intervened in the Case?**

As an initial matter, the Court must select the date after which the Intervenors are required to share in the *custodia legis* expenses. Gulf Copper contends that the *custodia*

4

*legis* expenses should be shared among all claimants from the time of the arrest of the Vessel. The Intervenors disagree vehemently, arguing that they should only share the expenses incurred after the date they intervened in the lawsuit.

The Court believes that the best approach is to require the Intervenors to share in the *custodia legis* expenses starting from the date of the Vessel's arrest on January 30, 2019. The reasons for this conclusion are many. For starters, there is no question that the Intervenors have benefitted from the arrest and safekeeping of the Vessel, and they should shoulder their share of those expenses. Moreover, "[s]ince liens can no longer accumulate against the vessel during the arrest, Gulf Marine and Trevaskis benefit from Gulf Copper's diligent arrest as it prevented new liens from being incurred and prevented liens with higher priority from increasing in value during the passage of time." Dkt. 29 at 11–12. Because the Intervenors could not have realized this potential without Gulf Copper initiating the seizure of the Vessel, it is only equitable to require the Intervenors to share in the *custodia legis* expenses from the date of the arrest. Additionally, as Gulf Copper points out, allowing the Intervenors "to escape [their] proportionate share of the substitute custodian's fees from the time of arrest would create unjust results and provide a perverse incentive to potential claims by encouraging claimants to delay making a claim in arrest cases in order to avoid contributing to the costs of the arrest." *Id.* at 10.

For these reasons, the Court holds that the Intervenors are responsible for their share of the *custodia legis* costs from the time of the Vessel arrest.

## B. Should the Parties Share the *Custodia Legis* Expenses on a Pro Rata or Per Capita Basis?

The next issue the Court must address is whether the *custodia legis* expenses should be divided on a pro rata or a per capita basis. A pro rata division means that each party will pay proportionally based on the size of their respective claims. A per capita division means that each claimant pays an equal amount of the *custodia legis* expenses.

Not surprisingly, the party with the smallest claim, Gulf Copper, contends that each claimant should pay the *custodia legis* expenses based on the size of its claim. Meanwhile, the party with the largest claim, Trevaskis, argues that the expenses should be shared equally.

In the Court's view, basic notions of fairness dictate that, as a general rule, a pro rata apportionment of *custodia legis* expenses is appropriate. As the Fifth Circuit has observed: "In some circumstances, requiring an intervenor to pay a per capita share of the cost of maintenance could be unreasonable. For example, an intervenor with a very small claim might not be forced to bare [sic] the same proportion of the cost of maintenance as a claimant with a large claim. In such circumstance, costs might be divided according to the relative size of each party's claim." *Beauregard, Inc.*, 107 F.3d at 353 n.8. In the present case, Trevaskis cannot articulate a single coherent reason why the Court should diverge from the general rule and award *custodia legis* expenses on per capita bases. Accordingly, the Court concludes that equity and fairness favor the sharing of *custodia legis* costs in proportion to the size of the parties' claims. *See id.* (allocating costs based on the relative value of the verified claims is reasonable). Consequently, the parties shall share in *custodia*

*legis* expenses as follows: Trevaskis—90.0594 percent; Gulf Marine—5.6347 percent; and Gulf Copper—4.3059 percent.

## C.     What are the Reasonable *Custodia Legis* Expenses?

"There is no dispute that reasonable docking fees constitute valid *custodia legis* expenses." *La. Int'l Marine, LLC v. Drilling Rig Atlas Century*, No. C–11–186, 2012 WL 2317541, at *1 (S.D. Tex. Jun. 18, 2012). In this case, the question this Court must answer is whether the daily docking fee of $4,114.00 proposed by Gulf Copper, as the substitute custodian, is a reasonable rate.

The Intervenors' argument is simple and straightforward: the $4,114.00 daily fee is unreasonable. According to Intervenors, it is nothing more than a highly inflated rate artificially created to put money in the pockets of Gulf Copper, as substitute custodian. In opposing the reasonableness of the $4,114.00 rate, Intervenors point to the fact that Gulf Copper only charged a $2,057.00 daily rate to moor the Vessel for several months prior to its arrest in January 2019. How, Intervenors ask, can Gulf Copper request a $4,114.00 daily rate with a straight face when it charged about half of that amount to berth the Vessel? In response, Gulf Copper explains that the $2,057.00 daily rate was a discounted rate initially negotiated and contracted between Gulf Copper and the owner of the Vessel based on the explicit belief that Gulf Copper would be awarded substantial repair work on the Vessel. Once it became clear that the Vessel's owner had no intention of initiating any repair work, Gulf Copper increased the berthage rate to its standard daily rate of $4,114.00. The $4,114.00 daily rate comports with the Port of Galveston's published tariff rate, indicating that Gulf Copper's proposed rate is not a random number plucked out of the sky,

7

but rather a rate similarly situated vessels could be expected to pay. *See La. Int'l Marine, LLC,* 2012 WL 2317541, at *2 (finding a docking fee reasonable when evidence established that the proposed rate was "consistent with docking fees charged by other facilities in the Gulf Coast area, including the Port of Corpus Christi"). It is also telling that Intervenors have failed to identify any place where the Vessel could be docked at a rate below $4,114.00 per day. Therefore, based on the evidence presented, the Court finds that the $4,114.00 docking fee was necessarily and reasonably incurred to preserve and maintain the Vessel while in custody.

**D.     Is Gulf Copper Entitled to Immediate Reimbursement of the *Custodia Legis* Expenses?**

Finally, Gulf Copper urges the Court to order Intervenors to immediately reimburse Gulf Copper for their share of *custodia legis* expenses incurred to date, and to pay the future anticipated costs on a weekly basis. Although the Court understands and appreciates that from an administrative standpoint, it might be easier to deduct the *custodia legis* expenses from the expected sale proceeds as opposed to requiring the parties to make payment arrangements on a weekly basis, the Court is not persuaded that any such administrative ease or convenience outweighs the significant financial burden thus far shouldered by Gulf Copper—the party with the smallest claim. Given the significant difference between the alleged value of the Vessel and the total amount of asserted claims, at this stage, it is questionable whether the sale of the Vessel will net sufficient proceeds to cover all amounts due. Thus, the Court finds that Gulf Copper's request is appropriate in this case. Accordingly, Intervenors are ordered to immediately reimburse Gulf Copper for their share

of *custodia legis* expenses incurred to date, and to pay the future anticipated costs on a weekly basis.

To be clear, the parties are responsible for the following percentages of the *custodia legis* expenses: Trevaskis—90.0594 percent; Gulf Marine—5.6347 percent; and Gulf Copper—4.3059 percent. As of June 18, 2019, Gulf Copper will have acted as substitute custodian for 138 days, at a $4,114.00 daily rate. Thus, from January 31, 2019, through June 18, 2019, the accrued *custodia legis* expenses total $567,732. Of this total amount, by June 18, 2019, Trevaskis must reimburse Gulf Copper $511,296.03, and Gulf Marine must reimburse Gulf Copper $31,990.00. Thereafter, Trevaskis shall reimburse Gulf Copper for its proportionate share of accrued *custodia legis* expenses at a rate of $25,935.31 per week, and Gulf Marine shall reimburse Gulf Copper for its proportionate share of accrued *custodia legis* expenses at a rate of $1,622.68 per week. These weekly payments, which shall cover the preceding week of *custodia legis* expenses, shall begin on June 25, 2019, and continue every Tuesday thereafter until the Vessel is released by the United States Marshal.

## CONCLUSION

For the reasons identified above, the Motion for Pro-Rata Apportionment is **GRANTED**.

**SIGNED** at Galveston, Texas on this 11th day of June, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE