UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| GULF COPPER & MANUFACTURING CORPORATION | § § § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:19-CV-00034 |
| M/V LEWEK EXPRESS, her apparel, equipment, engines, freights, tackle, etc., *in rem* | § § § § § | In Admiralty, FED. R. CIV. P . 9(h) |
| Defendant. | § § | |

## **MEMORANDUM AND ORDER**

Before the Court is Plaintiff Gulf Copper & Manufacturing Corporation ("Gulf Copper") and Intervening Plaintiff Gulf Marine Fabricators, LP's ("Gulf Marine") Opposed Joint Motion for Interlocutory Sale ("Motion for Interlocutory Sale"), which seeks to force the sale of the M/V LEWEK EXPRESS (the "Vessel"). *See* Dkt. 47. After reviewing the motion, responses, and reply, as well as the applicable law, the Court concludes that the Motion for Interlocutory Sale should be **GRANTED**.

### **BACKGROUND**

Gulf Copper filed this lawsuit on January 29, 2019, seeking to recover $442,255.00 for berthing, mooring, and related services it provided to the Vessel, a pipe-lay ship, through the end of January 2019. At Gulf Copper's request, the Court arrested the Vessel and appointed Gulf Copper substitute custodian.

Following notice of the Vessel's arrest in the *Galveston Daily News*, Gulf Marine and Trevaskis Limited ("Trevaskis") intervened in the lawsuit to assert their respective claims against the Vessel. Gulf Marine asserted a claim for $578,743.76 arising from unpaid dockage, mooring, and towage fees. Trevaskis asserted a claim to three pieces of pipe-lay equipment currently onboard the Vessel. The pipe-lay equipment—Reel System IV, 60 MT 3 track tensioner, and 200 MT PLET Launch Frame—is all specifically designed to assist the Vessel in furtherance of its pipe-laying operations.

After Gulf Marine and Trevaskis appeared in the suit, "the purported owner of the Vessel, Ocean Lion Shipping Ltd. ('Ocean Lion'), made a limited appearance . . . and filed its Verified Statement of Right or Interest, claiming to be the 'true and bona fide owner of the Vessel." Dkt. 47 at 3 (internal quotation marks and citation omitted). Ocean Lion has represented to the parties and the Court its desire and continuing efforts to secure release of the Vessel. However, suitable progress has not occurred; thus, Gulf Copper and Gulf Marine filed the Motion for Interlocutory Sale, seeking to sell the Vessel pursuant to Rule E(9) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Admiralty Rules").

As grounds for interlocutory sale, Gulf Copper and Gulf Marine contend: (1) the Vessel is already in a deteriorated condition (i.e., it is unmanned, laid up, and suffers from water intrusion) and it is likely to worsen if it continues to be held in detention; (2) the Vessel has incurred excessive custodial care expenses to date and is expected to incur additional expenses in the future (i.e., custodial fees accrue at a rate $4,114.00 per day); and (3) Ocean Lion has unreasonably delayed securing release of the Vessel, whether by

2

bond or otherwise (i.e., the Vessel has been under arrest for more than four months). *See* Dkt. 47.

In response to the Motion for Interlocutory Sale, Ocean Lion does not contend that a sale is inappropriate under Rule E(9) of the Admiralty Rules. Rather, Ocean Lion merely argues that any sale should be delayed for 45 days to allow it additional time to try and secure the Vessel's release. *See* Dkt. 51. Similarly, Trevaskis does not oppose Gulf Copper's and Gulf Marine's right to seek the sale of the Vessel. Instead, Trevaskis specifically argues that the Vessel should not be sold while its pipe-lay equipment is still affixed to the ship because, in Trevaskis's opinion, its pipe-lay equipment is not an appurtenance to the Vessel. *See* Dkt. 50.

The Court addresses the sale and appurtenance issues in turn.

## INTERLOCUTORY SALE

The Admiralty Rules provide the methods by which the owner of an arrested vessel may exercise its due process rights to vacate the arrest or to substitute some other security in the place of the property. While the property is arrested, there are three scenarios listed in the Admiralty Rules that justify an interlocutory sale of the property:

> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>
> (B) the expense of keeping the property is excessive or disproportionate; or
>
> (C) there is an unreasonable delay in securing release of the property.

FED. R. CIV. P. SUPP. ADMIRALTY RULE E(9)(a)(i). A showing of one of the three criteria is sufficient for a court to order an interlocutory sale. *See Silver Star Enters., Inc. v. M/V SARMACCA*, 19 F.3d 1008, 1014 (5th Cir. 1994); *Rowan Cos., Inc. v. M/V FR8 PRIDE*, No. C-12-163, 2012 WL 5465964, at *2 (S.D. Tex. Oct. 30, 2012).

Gulf Copper and Gulf Marine have offered argument and evidence supporting each justification for an interlocutory sale under Rule E(9), and none of the parties dispute their arguments or evidence. Accordingly, the Court finds that an interlocutory sale is appropriate in this case.

Although Ocean Lion seeks to delay any sale of the Vessel, it has already had more than four months to secure the Vessel's release. The Court is not convinced that a further delay is appropriate. That being said, the sale cannot occur overnight. To allow sufficient time for proper notice to issue and taking into account the reality that many folks will be taking off the July 4 holiday, the Court is setting a July 15, 2019 sale date. Ocean Lion is, therefore, receiving one last chance to secure the Vessel's release by the sale date.

The only remaining question, then, is whether Trevaskis's pipe-lay equipment should be sold with the Vessel? To decide this issue, the Court turns to the law surrounding appurtenances.

## APPERTUNANCES

"A fundamental principle of the maritime lien system is that the vessel itself, along with all equipment aboard it that is essential to the ship's navigation and operation, is subject to maritime liens." *Motor-Servs. Hugo Stamp, Inc. v. M/V REGAL EMPRESS*, 165 F. App'x 837, 840 (11th Cir. 2006) (citation omitted). Such equipment is commonly

referred to as appurtenances. There are "slightly different formulation[s] of the definition" of an appurtenance, but the general meaning of the term remains the same. *Malin Int'l Ship Repair & Drydock, Inc. v. Modu Prospector*, 161 F. Supp. 3d 481, 489 (S.D. Tex. 2015). An appurtenance is "any specifically identifiable item that is destined for use aboard a specifically identifiable vessel and is essential to the vessel's navigation, operation, or mission." *Gonzalez v. M/V Destiny Panama*, 102 F. Supp. 2d 1352, 1356 (S.D. Fla. 2000).

Importantly, "courts have repeatedly upheld maritime liens upon 'severable' equipment, including, surprisingly enough, equipment merely *leased* to the owner." *Gowen, Inc. v. F/V Quality One*, 244 F.3d 64, 69 (1st Cir. 2001) (citations omitted). This is so because the maritime lien system is based upon practical realities confronting maritime businesses. As explained by one court:

> This rule . . . is predicated upon the principle that one extending credit to a ship has the right to assume that the entire vessel, including all of her equipment essential to her navigation or to the completion of the voyage upon which she is embarked, stands as security for the debt. This, in turn, is based upon the principle that the legitimate expectations of a maritime lienholder as to the property standing as security for the debt should be enforced.

*Stewart & Stevenson Servs., Inc. v. M/V Chris Way MacMillan*, 890 F. Supp. 552, 562 (N.D. Miss. 1995).

With this framework in mind, the Court considers Trevaskis's specific arguments. Trevaskis first argues that its pipe-lay equipment is not essential to the Vessel's operation or mission because other equipment that performs a similar function is also on board the Vessel. Notably, Trevaskis has not offered any authority to support this argument. In response to Trevaskis's argument, Gulf Copper and Gulf Marine argue that "courts have

5

routinely found items of equipment to be appurtenances even where other items, capable of performing a similar function, are also on board the Vessel." *See* Dkt. 62 at 3 (citing *Gonzalez*, 102 F. Supp. 2d at 1356–57; *Canaveral Port Auth. v. M/V Liquid Vegas, Imo No. 8222941*, No. 6:09-CV-1447-ORL-28D, 2009 WL 3347596, at *3–8 (M.D. Fla. Oct. 15, 2009); *Stewart & Stevenson Servs.*, 890 F. Supp. at 562–63). This case law is persuasive, and it is undisputed that the use of the Trevaskis pipe-lay equipment furthered the Vessel's operation and mission. In light of the authority presented by Gulf Copper and Gulf Marine, the Court finds that Trevaskis's first argument fails.

Trevaskis's next argument fairs no better. Trevaskis argues because the Vessel was not on a mission when seized, its pipe-lay equipment could not have been essential to the Vessel's navigation, operation, or mission. *See* Dkt. 60 at 7. In other words, Trevaskis seems to contend that the mission of the Vessel is somehow uncertain because it was not actively engaged in a mission at the time of its arrest. This argument, however, is undercut by Trevaskis's sworn filings. In the Verified Claim and Complaint in Intervention against the M/V LEWEK EXPRESS, Trevaskis stated that its pipe-lay equipment "allowed the Vessel to perform her particular mission as a pipe-laying vessel." Dk. 19 at 5. A little over a month later, Trevaskis filed a First Amended Verified Claim and Complaint in Intervention against the M/V LEWEK EXPRESS, and again stated that its pipe-lay equipment "allowed the Vessel to perform her particular mission as a pipe-laying vessel." Dkt. 45 at 7. Considering these factual pronouncements, which were offered in conjunction with a sworn declaration under 28 U.S.C. § 1746, the Court is not persuaded that the mission of the Vessel is somehow indeterminable. Trevaskis has clearly declared in sworn

filings that the mission of the Vessel concerns acting as a pipe-lay vessel, and its pipe-lay equipment was used in furtherance of that mission. Thus, Trevaskis's second argument fails.

Third, Trevaskis contends that its pipe-lay equipment was originally leased to the Vessel's previous owner under an equipment lease agreement and that agreement proves that it and the Vessel's previous owner intended for Trevaskis to retain ownership of the subject pipe-lay equipment. *See* Dkt. 60 at 7–8. In essence, Trevaskis seeks to impute knowledge of its intent regarding the pipe-lay equipment, which would have been known only to the Vessel's previous owner, onto Gulf Copper and Gulf Marine. This argument is illogical and is undermined by the very admiralty treatise Trevaskis cites in support of its argument, which provides:

> The intention of the parties regarding the treatment of the equipment in question and the degree to which the parties' intentions are apparent to innocent third parties will affect the determination as to whether such equipment will be deemed to be an appurtenance. *A court will not always give effect to express or implied intent of the parties, however, where the existence of the lease is not readily apparent to third parties.*

2 *Benedict on Admiralty* § 32 (7th ed. 1997) (emphasis added).

In this case, Gulf Copper and Gulf Marine are clearly third parties who had no reason to know about the existence of any lease agreement at the time they began providing services in favor of the Vessel. Thus, the Court declines to give effect to Trevaskis's undisclosed intent.

Lastly, Trevaskis contends that its pipe-lay equipment is not essential to the Vessel's operation or mission because it was "purposely built and designed to be mobile equipment

7

and to be moved onto and off of various vessels and to land." Dkt. 60 at 6. This argument also misses the mark. It is completely irrelevant whether the Trevaskis equipment was designed and fabricated to be mobile, movable, and easily and quickly deployed between vessels and on land. *See, e.g., Stewart & Stevenson Servs.*, 890 F. Supp. at 561 ("components of a vessel, even though readily removable," may be appurtenances). As explained above, "courts have repeatedly upheld maritime liens upon 'severable' equipment, including, surprisingly enough, equipment merely *leased* to the owner." *Gowen, Inc.*, 244 F.3d at 69 (citations omitted).

In sum, the Court finds that Trevaskis's pipe-lay equipment is an appurtenance to the Vessel because it is essential to the operation or mission of the Vessel. As such, the pipe-lay equipment will be sold with the Vessel.

## CONCLUSION

For the reasons identified above, the Motion for Interlocutory Sale (Dkt. 47) is **GRANTED.** The Court will enter a separate Interlocutory Decree and Order for the Sale of the M/V Lewek Express, containing the specifics of the sale.

**SIGNED** at Galveston, Texas on this 18th day of June, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

8